UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOWARD SKIDMORE, an individual; and SARAH DANCE, an individual, | Case No. 1:23-cv-00477-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| J.R. SIMPLOT COMPANY, | |
| Defendant. | |

## INTRODUCTION

Before the Court are multiple motions arising from the parties' cross-motions for summary judgment and related procedural matters in this employment discrimination case. Specifically, the Court considers: (1) Defendant J.R. Simplot Company's Motion for Summary Judgment (Dkt. 28); (2) Plaintiffs' separately filed Motions for Summary Judgment (Dkts. 30, 31); (4) Plaintiffs' Motion to Extend Time for Filing their Reply in Support of Summary Judgment (Dkt. 44); (5) Defendant's Motion to Strike Plaintiffs' Combined Reply Brief (Dkt. 48); and Defendant's Motion to Bifurcate (Dkt. 32). On December 11, 2025, the Court heard oral argument on the cross-motions for summary judgment and is now prepared to issue its ruling. For the reasons explained below, the Court will grant Simplot's

motion for summary judgment, deny plaintiffs' cross-motions, and dismiss all pending claims. The Court will also grant Simplot's motion to strike plaintiffs' late-filed reply brief, which will moot plaintiffs' motion for an extension of time to file the reply brief.

## UNDISPUTED FACTS[1]

Plaintiffs Howard Skidmore and Sarah Dance are former employees of Defendant J.R. Simplot Company. Both were longtime employees, with over twenty years of service, and both held leadership roles at Simplot's Caldwell, Idaho potato processing plant.

In November 2021, as part of its response to the global COVID-19 pandemic, Simplot implemented a COVID-19 vaccination requirement for certain employees within the company. Simplot identified several factors to consider in determining which employees would be required to receive the vaccine, including whether an employee's position required travel. Simplot determined that employees who might need to travel would be subject to the vaccination requirement based on its collaborative business model and concerns that experienced leaders could be

---

[1] The Court will adopt Simplot's Statement of Undisputed Facts, filed at Dkt. 28-2, in considering all pending motions for summary judgment. As Simplot correctly notes, the statements plaintiffs submitted in support of their own motions for summary judgment (*see* identical filings at Dkts. 30-4 and 31-4) are deficient because they fail to cite to record evidence. The statement of facts plaintiffs proffered in opposition to Simplot's motion contains similar deficiencies. *See* Dkt. 34.

required to backfill key plant positions to prevent production shutdowns caused by COVID-19–related staffing shortages. The positions held by Skidmore and Dance were among those designated as subject to the vaccination requirement.

In response to the vaccination requirement, both Skidmore and Dance sought exemptions from the vaccination requirement. Skidmore initially sought exemptions on both medical and religious grounds. However, when he was unable to identify a qualifying medical condition, he abandoned his medical exemption request and proceeded solely with his request for a religious accommodation. Dance, a practicing Catholic, pursued a religious exemption. After both plaintiffs completed the exemption process, Simplot denied their requests for religious accommodations. With respect to Skidmore, Simplot determined that he had not demonstrated that his refusal to receive the COVID-19 vaccine was based on a sincerely held religious belief. As for Dance, Simplot concluded that although she expressed her adherence to the Catholic faith, she did not establish how her Catholic beliefs specifically prohibited her from receiving the COVID-19 vaccine.

Following the denial of their religious exemption requests, Simplot placed Skidmore and Dance on administrative leave and subsequently terminated their employment in January 2022. In October 2023, plaintiffs initiated this action against Simplot, alleging failure to accommodate under Title VII and retaliation under Idaho Code § 67-5911, based on their termination for refusing to receive the

COVID-19 vaccine. Skidmore asserts an additional claim for age discrimination arising from his termination. After the close of discovery, all parties moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the non-moving

party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

As noted above, there are multiple motions pending before the Court. The Court will begin with Simplot's motion for summary judgment.

### A.    Simplot's Motion for Summary Judgment

Simplot argues that plaintiffs Skidmore and Dance cannot establish prima facie claims for failure to accommodate under Title VII, retaliation under Idaho Code § 67-5911, or—in Skidmore's case—age discrimination, and that all claims therefore fail as a matter of law. The Court agrees.

#### 1.  Title VII Religious Discrimination

Skidmore and Dance pursue their failure-to-accommodate claim under Title VII. Title VII makes it unlawful to discriminate against an individual based on their religion and requires an employer to accommodate an employee's religious beliefs unless the accommodation would impose an undue hardship. *See* 42 U.S.C. §§

2000e-2, 2000e(j). Claims alleging a failure to accommodate religion under Title VII are analyzed using a burden-shifting framework. *See*, *e.g.*, *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). First, an employee must plead a prima facie case of failure to accommodate a religious belief. *Id.* (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999)). If the employee sets forth a prima facie claim, the burden shifts to the employer to show that it was justified in not accommodating the employee's religious beliefs or practices. *Id.* (citing *Sutton*, 192 F.3d at 830).

An employee can satisfy their prima facie burden by demonstrating (1) that the employee had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) that the employee informed the employer of the religious belief and conflict; and (3) that the employer discharged, threatened, or otherwise subjected the employee to adverse employment action because of the employee's inability to fulfill the job requirement. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). Where an employee seeks a religious accommodation, the employee must "plead facts sufficient to show the accommodation request also springs from a bona fide religious belief." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025) (citing *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682–83 (9th Cir. 1998)).

Simplot argues that plaintiffs cannot satisfy the first element of their prima

facie case—namely, that Skidmore and Dance held bona fide religious beliefs that conflicted with Simplot's vaccination requirement. With respect to Skidmore, Simplot contends that he failed to identify any bona fide religious belief and instead offered only secular objections grounded in medical concerns, personal preferences, and a generalized moral conscience. As for Dance, Simplot asserts that, while her Catholic faith is undisputed, she has not shown how her religious beliefs conflict with Simplot's vaccination requirements.

"[A] plaintiff fails to state a prima facie case if the belief motivating her accommodation request is not, in fact, religious." *Detwiler*, 156 F.4th at 894. Title VII defines religion to include all aspects of observance and practice, as well as belief. *Tiano*, 139 F.3d at 681. This definition, however, is not limitless and does not encompass secular preferences. *Id.* at 682. Nor does it mean that employers must accommodate personal preferences "couched as a bona fide religious belief." *Allbright v. S. California Permanente Med. Grp. Inc.*, No. EDCV 23-0022 JGB (DTBX), 2025 WL 2205812 at *8 (C.D. Cal. July 30, 2025) (citing *Tiano*, 139 F.3d at 681-683). Similarly, the Court need not accept entirely conclusory assertions of religious belief. *Bolden-Hardge*, 63 F.4th at 1223. Although courts "may not substitute their own judgment for that of the believer's" (*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)), "some inquiry into the religious or secular nature of a belief is necessary to prevent religious labels from becoming carte blanche to

ignore any obligation." *Detwiler*, 156 F.4th at 894 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–216 (1972)). The Court must make such inquiry to make a determination about the source of a belief when examining a plaintiff's prima facie case. *See Bolden-Hardge*, 63 F.4th at 1223 (Deference to assertions of religious belief "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value.").

In a recent decision—*Detwiler v. Mid-Columbia Medical Center*, 156 F.4th 886, 893 (9th Cir. 2025)—the Ninth Circuit provided guidance on how district courts should assess whether a belief underlying a Title VII failure to accommodate claim is religious or secular in nature. *Id.* at 892-900. The court reiterated that entirely conclusory assertions of religious belief do not need to be taken as true. *Id.* at 894. Rather, "[a] plaintiff seeking a religious exemption must plead a sufficient nexus between her religion and the specific belief in conflict with the work requirement." *Id.* at 895. The plaintiff must "connect the requested exemption with a truly religious principle." *Id.* "Invocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction." *Id.* To allow otherwise would "destroy the pleading standard for religious discrimination claims, allowing complainants to invoke magic words and survive a dismissal without stating a prima facie case." *Id.*

Here, both Skidmore and Dance fail to establish the required nexus between

a sincerely held religious belief and their requested exemption from Simplot's vaccination requirement. As to Skidmore, the record reflects that his exemption request and related communications failed to articulate a bona fide religious belief entitling protection under Title VII. Rather, Skidmore asserted simply that he was a person of faith and that his faith was intertwined with his morals, conscience, and logic. *See*, *e.g.*, Dkt. 28-7, Ex. E ("I believe God has given us the ability to understand and choose right from wrong and speak to us through our conscience. As an engineer/scientist, I have faith in data and logic."); Dkt. 28-7, Ex. K ("Therefore, my religious and moral convictions are sincerely held and are one and the same."). These generalized assertions, however, are insufficient to establish a religious basis for refusing the COVID-19 vaccine and reflect the type of broad principles that *Detwiler* says cannot, standing alone, support a Title VII claim.

Moreover, the record demonstrates that Skidmore's objections to the vaccine were rooted in secular and personal concerns rather than in any identifiable religious doctrine. His refusal to vaccinate was based on his belief that he possessed natural immunity, skepticism about the vaccine's safety, and concerns about potential long-term side effects. Because Skidmore's underlying objections rested on medical, philosophical, and personal beliefs rather than religious ones, they do not fall within Title VII's protections. See *Prodan v. Legacy Health*, 716 F. Supp. 3d 1044, 1049 (D. Or. 2024) ("the court must distinguish between conflicts that are

rooted in religious belief as opposed to ones based on purely secular philosophical concerns") (internal quotations and citations omitted). For these reasons, Skidmore does not satisfy the first element of his prima facie case under Title VII.

Dance likewise fails to establish a sufficient nexus between her religion and the specific belief in conflict with Simplot's vaccination requirement. Dance is a practicing Catholic, and she identified her Catholic faith when seeking a religious accommodation. But her request did not articulate how any Catholic doctrine, tenet, or practice conflicted with receiving the COVID-19 vaccine. Instead, Dance stated that she objected to the vaccination based on her "moral conscience" and explained that "[her] Church teaches that following one's conscience is following Christ Himself." Dkt. 31-2, Ex. 2. Yet an appeal to one's conscience, without identifying any underlying religious principle that conflicts with the vaccination, is inherently personal and insufficient to establish a claim under Title VII. Lower courts have consistently held that plaintiffs may not repackage personal, secular beliefs as religious ones to obtain Title VII protection. *See*, *e.g.*, *Medrano v. Kaiser Permanente*, No. 8:23-cv-02501-DOC-ADSX, 2024 WL 3383704, at *4 (C.D. Cal. July 10, 2024); *Trinh v. Shriners Hosps. for Child.*, No. 3:22-cv-01999-SB, 2023 WL 7525228, at *7 (D. Or. Oct. 23, 2023). As *Detwiler* makes clear, broad invocations of religious principles such as a divined moral conscience cannot, standing alone, transform secular concerns into a religious conflict. *See Detwiler*,

156 F.4th at 895. To the extent Dance invoked prayer as a basis for her objections to the vaccination requirement, this too is insufficient to establish a religious conflict under Title VII. *See Id.* at 897 ("Invocation of prayer, without more, is still insufficient to elevate personal medical judgments to the level of religious significance."). Accordingly, Dance also fails to establish that she held a bona fide religious belief that conflicted with Simplot's vaccination requirement.[2]

For all these reasons, the Court will grant Simplot's motion for summary judgment, dismiss plaintiffs' Title VII claims, and deny plaintiffs' cross-motions for summary judgment of these claims.

### 2. Skidmore's Age Discrimination Claim

Likewise, the Court will grant Simplot's motion for summary judgment on Skidmore's age discrimination claim. Under the Age Discrimination in Employment Act, it is unlawful for an employer to "discriminate against any

---

[2] During Simplot's religious accommodation process, Dance initially expressed concern that the COVID-19 vaccine was connected to abortion and stated that, as a Catholic, she is "very much against abortion." Dkt. 31-2 Ex. 3. However, in her deposition in this matter, Dance disclaimed any such reliance on abortion as a basis for her religious exemption request. Dkt. 28-3, Ex. A at 143 ("Abortion and Catholicism do not go hand-in-hand. *But it is not the basis for my exemption.* My moral conscience is the basis for my exemption.") (emphasis added). Thus, she has waived any argument that abortion-related objections to the COVID-19 vaccine serve as a source of religious conflict at summary judgment. *See, e.g.*, *Alcala v. Monsanto Co.*, No. C-08-04828 PJH (DMR), 2014 WL 1266204 at *1 n.2 (N.D. Cal. Mar. 24, 2014) (finding that plaintiff narrowed his claims to respiratory problems based on his deposition testimony); *Iglesias v. Arizona Beverages USA, LLC*, No. 22-CV-09108-JSW, 2025 WL 2714143 at *6-7 (N.D. Cal. Aug. 14, 2025) (holding that the plaintiff abandoned his monetary-damages claim by unequivocally testifying in his deposition that he was not seeking monetary recovery).

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To show that an employer took an adverse action 'because of' age, 'a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.'" *Caldrone v. Circle K Stores Inc.*, 156 F.4th 952, 956 (9th Cir. 2025) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). To survive summary judgment, a plaintiff must "provide evidence, either direct or circumstantial, to support a reasonable inference that his termination was discriminatory." *Id.* (citing *Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012, 1017 (4th Cir.1996)). The amount of evidence plaintiff must produce is very little, "so long as it is more than 'purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars.'" *Id.* (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.,* 840 F.2d 1409, 1419 (9th Cir.1988)).

A plaintiff can make a prima facie case using the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination by demonstrating he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age

discrimination.'" *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). If a plaintiff establishes their prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Coleman* 232 F.3d at 1281. If the employer satisfies this burden, the plaintiff "must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.*

Although Skidmore satisfies the first three elements of his prima facie case, he cannot satisfy the fourth. Neither his briefing nor the evidentiary record contains any indication that Simplot replaced him with a substantially younger employee with equal or inferior qualifications. While it is undisputed that Skidmore's replacement was under 40 years old (Dkt. 28-4 at 10), the record provides no evidence that the replacement possessed equal or inferior qualifications. For this, Skidmore relies solely on his own conclusory or speculative assertions. *See*, *e.g.*, Dkt. 33 at 7 ("Howard believes that the Selectee [] replacing him was . . . plainly inferior in qualification to perform the job he once held"); *Skidmore Dec.* ¶ 31, Dkt. 35 ("I believe that he . . . does not hold an Engineering Degree and was not competent to do my job at the Idaho Plant as friends of mine have reported that he is no longer the Engineering Manager at the Idaho Plant"). Such unsupported statements are insufficient to satisfy the fourth element of a prima facie ADEA

claim.

Further, nothing in the record supports an inference that age factored into Simplot's decision to terminate Skidmore's employment. Even assuming Skidmore could establish a prima facie case, his claim would still fail because Simplot has articulated a legitimate, nondiscriminatory reason for his termination—his refusal to comply with the company's COVID-19 vaccination requirement—and Skidmore offers no evidence of pretext. To the contrary, in his declaration, Skidmore states, "I believe that Simplot terminated me because I would not vaccinate. They didn't care that I had a sincerely-held religious belief." *Skidmore Dec.* ¶ 38, Dkt. 35. Likewise, Plaintiffs' Statement of Undisputed Material Facts asserts that "Simplot Company terminated Howard [Skidmore] for not taking the COVID19 vaccine as mandated." Dkt. 34, at 3. Skidmore identifies no facts, direct or circumstantial, from which a reasonable jury could conclude that age played any role in the termination decision. The record instead shows that Simplot terminated Skidmore solely because he declined to comply with the company's vaccination requirement. Skidmore offers no evidence that this explanation was false or that his age was the real reason for his termination. Because nothing in the record indicates that Skidmore's age was the but-for cause of his termination, and no reasonable jury could find otherwise, Simplot is entitled to summary judgment on Skidmore's age discrimination claim.

### 3.  Plaintiffs' Retaliation Claims

The Court will also grant summary judgment to Simplot on plaintiffs' retaliation claims. Plaintiffs assert these claims under Idaho Code § 67-5911, alleging that Simplot terminated their employment because they engaged in the protected activity of requesting religious accommodations to Simplot's COVID-19 vaccination requirement. In moving for summary judgment, Simplot argued that the retaliation claims fail as a matter of law. Plaintiffs did not address this aspect of Simplot's motion in their response brief. Simplot therefore contends that plaintiffs have abandoned these claims. Simplot is correct: By failing to raise these claims in opposing Simplot's motion, plaintiffs effectively abandoned them. *See*, *e.g.*, *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093 (9th Cir. 2005) (plaintiff abandoned claims by failing to raise them in opposition to the defendant's motion for summary judgment). Accordingly, the Court will grant Simplot's motion on that basis alone. Alternatively—and for the sake of completeness—the Court will address the merits of plaintiffs' retaliation claims.

Idaho Code § 67-5911 is part of the Idaho Human Rights Act ("IHRA"), which "prohibits discriminatory actions against persons in protected groups [and] prohibits retaliation against persons who oppose such actions." *Patterson v. State, Dep't of Health & Welfare*, 256 P.3d 718, 726 (Idaho 2011). Idaho Code § 67-5911 provides:

It shall be unlawful for a person or any business entity subject to regulation by this chapter to discriminate against any individual because he or she has opposed any practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

Under the IHRA, courts are permitted to reference federal law for guidance in construing the state provisions. *Mendez v. Univ. Health Servs. Boise State Univ.*, 409 P.3d 817, 822 (Idaho 2018) (citing *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1069 (2008). On summary judgment in cases arising under the IHRA, courts apply the *McDonnell Douglas* burden-shifting framework, the first step of which is establishing a plaintiff's prima facie case. *Mendez*, 409 P.3d at 822-823. For a retaliation claim, this requires the plaintiff to show that "(1) he engaged in protected activity; (2) suffered an adverse employment action; and (3) there is a causal link between the two." *Id.* at 824 (citing *Patterson*, 256 P.3d at 726).

Here, plaintiffs fail to establish the first element of their prima facie case—engaging in protected activity under the IHRA. Although Idaho courts have not addressed whether requesting a religious accommodation constitutes protected activity under the IHRA, several district courts within the Ninth Circuit have considered the issue under Title VII and concluded that such requests alone do not

qualify as protected activity.[3] *See Trueblood v. Valley Cities Counseling &*
*Consultation*, 748 F. Supp. 3d 988, 1013 (W.D. Wash. 2024) (declining to find that
requesting a religious accommodation is a protected activity); *Hasia-Welch v.*
*Disability Rts. California*, No. 24-CV-00810-AJB-BLM, 2024 WL 5112745 at *6-7
(S.D. Cal. Dec. 13, 2024) (holding that plaintiff did not oppose "allegedly unlawful
activity by initiating the accommodations process, and thus was not engaged in a
protected activity); *Small v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01290-JR,
2024 WL 4137484 at *6 (D. Or. Aug. 5, 2024) (holding that plaintiffs failed to
establish protected activity because they offered only a conclusory allegation of
retaliation based on religious-exemption requests and did not allege they reported or
opposed any discriminatory practice). Likewise, the Eighth Circuit has held that a
request for a religious accommodation is not protected activity, noting that "merely
requesting a religious accommodation is not the same as opposing the allegedly
unlawful denial of a religious accommodation." *EEOC v. N. Memorial Health Care*,
908 F.3d 1098, 1102 (8th Cir. 2018).

    The Court finds this authority persuasive. Although other authority may

---

[3] "The Idaho Human Rights Act, I.C. § 67–5901 *et seq.,* provides for the execution of the
federal Civil Rights Act within the State of Idaho. . . . This Court has determined on multiple
occasions that the legislative intent reflected in I.C. § 67–5901 allows our state courts to look to
federal law for guidance in the interpretation of the state provisions." *Frogley v. Meridian Joint
Sch. Dist. No. 2*, 314 P.3d 613, 619 (Idaho 2013) (internal quotation and citations omitted).

recognize accommodation requests as protected activity under Title VII, plaintiffs neither cite such authority nor develop any argument for extending that reasoning to the context of a COVID-19 vaccine mandate. *See*, *e.g.*, *Enriquez v. Gemini Motor Transp. LP*, 2021 WL 5908208, at *7 (D. Ariz. Dec. 14, 2021) (holding that religious accommodation requests are protected activity). On this record, and given the split in authority, the Court declines to extend anti-retaliation protections to the bare act of requesting a religious accommodation absent any argument from plaintiffs supporting such an extension.

## B. Simplot's Motion to Strike Plaintiffs' Combined Reply Brief

Finally, the Court will address Simplot's motion to strike the combined reply brief plaintiffs filed in support of their cross-motions for summary judgment. First, Simplot argues that the reply brief should be stricken as untimely. Second, Simplot asserts that the reply improperly attempts to cure deficiencies in plaintiffs' initial summary judgment filings by introducing evidence and arguments not included in their original briefing. After reviewing plaintiffs' reply brief, the Court agrees that it should be stricken in its entirety.[4]

Simplot is correct that plaintiffs failed to comply with Local Rule 7.1(b)(3). Their reply brief was filed two weeks late, without leave of Court. Even assuming,

---

[4] Because the Court is granting the motion to strike the reply brief, the earlier-filed motion for an extension will be deemed moot.

for the sake of argument, that plaintiffs' counsel had good cause for the delayed filing, the reply brief counsel eventually filed is riddled with deficiencies. Most significantly, the reply brief well exceeded the scope of the response brief and plaintiffs sought to introduce evidence for the first time within the reply.

It is axiomatic that "reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Burnham v. City of Rohnert Park*, 1992 WL 672965, at *1 n.2 (N.D. Cal. May 18, 1992) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)). And submitting new evidence in a reply is improper because it deprives the opposing party of the opportunity to respond. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) (citations omitted). Where the opposing party lacks the opportunity to respond, the Court should decline to consider the new evidence or arguments. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Here, plaintiffs raise new arguments and new factual assertions that were not presented in their summary-judgment motions, and they attempt to retroactively cure deficiencies in their initial filings by adding record citations that did not appear in the opening briefs. Simplot would have no chance to respond to these new matters given the approaching summary judgment hearing. Accordingly, the Court

will grant Simplot's motion to strike plaintiffs' combined reply brief.[5]

## ORDER

**IT IS ORDERED that:**

(1)    Defendant J.R. Simplot Company's Motion for Summary Judgment (Dkt. 28) is **GRANTED**. Accordingly, all claims are **DISMISSED WITH PREJUDICE**. The Court will enter judgment separately.

(2)    Plaintiffs' Howard Skidmore's and Sarah Dance's Motions for Summary Judgment (Dkts. 30, 31 ) are **DENIED**.

(3)    Defendant J.R. Simplot Company's Motion to Bifurcate Trial (Dkt. 32) is **DEEMED MOOT**.

(4)    Plaintiffs' Motion to Extend Time for Filing their Reply in Support of Summary Judgment (Dkt. 44) is **DEEMED MOOT**.

(5)    Defendant J.R. Simplot Company's Motion to Strike Plaintiffs' Combined Reply Brief (Dkt. 48) is **GRANTED**. Accordingly, Plaintiffs' Combined Reply Brief, filed at Dkt. 46, is **STRICKEN**.

(6)    Defendant J.R. Simplot Company's Request that the Court Strike Plaintiffs' Statements of Undisputed Material Facts (Dkt. 38-3, at 1-2) is

---

[5] Although plaintiffs' reply and the arguments therein are stricken, the Court reviewed the reply and finds that it would not change the analysis in granting Simplot's motion for summary judgment and denying plaintiffs' cross-motions for summary judgment.

**GRANTED**. Accordingly, Plaintiffs' Statements of Undisputed Material Facts, filed at Dkts. 30-4 and 31-4, are **STRICKEN**.

DATED: December 29, 2025

B. Lynn Winmill
U.S. District Court Judge